Floyd Carroll EVANS *v.* Catherine TILLERY

04-688                                                    204 S.W.3d 547

Supreme Court of Arkansas
Opinion delivered March 3, 2005

*Keith, Miller, Butler & Webb, PLLC*, by: *Mary M. White Schneider*, for appellant.

*Davis & Associates, P.A.*, by: *Charles E. Davis*, for appellee.

ROBERT L. BROWN, Justice. Appellant Floyd Evans appeals from the circuit court's order modifying his monthly child-support obligation to a payment of $390.00 per month and ordering him also to pay as child support a one-time lump-sum amount of $31,195.95, representing fifteen percent of two judgments he received. He asserts three points on appeal. We disagree that the circuit court committed reversible error, and we affirm the court's order.

On August 25, 2003, appellee Catherine Tillery filed a motion to modify a 1996 order of child support. In her motion, she alleged that she was awarded custody of the couple's daughter, M.E., in 1996, and that Evans had originally been ordered to pay $350.00 each month in child support. She further alleged that since that time, there had been a change in circumstances in that (1) Evans had increased his employment income through regular employment, and (2) he had been awarded two judgments, totaling approximately $435,000.00. Tillery requested an increase in her monthly child-support award and also fifteen percent of Evans's judgment awards.

Evans responded and denied any substantial change in circumstances and also denied that his income had increased since the entry of the 1996 order. He admitted that while he had been awarded a judgment for $35,000.00, he had settled for $20,000.00. He further admitted that while he was awarded a separate judgment for $400,000.00, he only received $280,000.00 of that amount. Evans denied that either judgment was subject to levy for child support.

The circuit court held a hearing on Tillery's motion. After hearing testimony from both Evans and Tillery, as well as arguments of counsel, the circuit court made the following ruling:

> THE COURT: But, at any rate, in my judgment, Mr. Evans, you're going to have to pay child support, based upon the net amount that you relieved [sic] from the malicious prosecution suit and from the assault suit. And that net amount, as I understand it, is $207,973. That's taking into account the $6,000 that was paid previously.

The child support formula is 15 percent of that amount. And, Counselor, you need to check my arithmetic, because I didn't have a calculator up here, and I sort of hurriedly figured that. But, if my arithmetic is correct, the amount of the child support is $31,195.95. A judgment shall be entered for that amount.

Ms. Lindsey, as I said earlier, that's not money that you can take and go out and spend on Christmas presents.[1] That's for the benefit of your child, and the Court directs that you account for the expenses for this — of all this money, because it's over and above what else you have.

. . .

And so, you'll need to do that. Mr. Davis will advise you how you need to handle that. I notice now that the net amount of Mr. Evans' income today is — he's making $15 an hour. According to his Affidavit of Financial Means, he gets $464.10 a week, net. Have I picked up the right figure on that?

EVAN'S COUNSEL: That's right, your Honor.

THE COURT: Again, figuring four and a third weeks a month, the monthly amount is $1,996.63. The child support chart reflects that a child support amount should be $383 per month, so the reoccurring child support, from this day forward then, shall be $383 per month. . . .

An order was then entered, memorializing the circuit court's decision. However, the circuit court's order reflects the following rulings:[2]

3) That the Court finds that the Plaintiff/Respondent received by way of settlement of judgments against a banking institution and an

---

[1] Catherine Tillery is now Catherine Lindsey due to remarriage.

[2] We recognize that the circuit court's calculations both from the bench and in its order appear to be mathematically incorrect. However, neither party raises this as an issue in this appeal and for that reason, we will not address it.

individual, sums totaling Three Hundred Thousand Three Hundred Thirty Four Dollars ($300,334.00), from which medical, lost wages, State and Federal taxes in the sum of Ninety Eight Thousand Three Hundred Sixty One and 90/100 Dollars ($98,361.90) was deducted leaving Two Hundred Seven Thousand Nine Hundred Seventy Three Dollars ($207,993.00) for total net judgment.

4) That over Plaintiff's stated objections the Court finds no merit in Plaintiff's arguments as annunciated in his pre-trial brief filed of record and therefore the Court finds that the Defendant/Petitioner shall be entitled to judgment against the Plaintiff/Respondent in the sum of Thirty One Thousand One Hundred Ninety Five and 95/100 Dollars ($31,195.95), equating to fifteen percent (15%) of the net of the net [sic] judgment for a one time child support award on said judgments. Further, Defendant is to provide a monthly itemization to Plaintiff as to how the money is expended with invoices to substantiate.

5) That Plaintiff's current support, based on his Affidavit of Financial Means submitted in this cause, shall be set at Three Hundred Ninety Dollars ($390.00) per month.[3]

Evans urges, as a point on appeal, that the circuit court wrongly concluded that there was a material change in circumstances which warranted a change in his child-support obligation. He recites case law dealing with the required change in circumstances but neglects to make any arguments in support of that point in his brief other than a conclusory statement that a change had not occurred.

Tillery responds that Evans's brief does not set forth an argument other than the bare allegation that there was not a material change of circumstances. Nonetheless, Tillery asserts that since the previous award of child support, Evans had an increase in income, as well as a change in his financial condition, which are material changes of condition warranting a change in Evans's child-support obligation.

In *McWhorter v. McWhorter*, 346 Ark. 475, 58 S.W.3d 840 (2001), this court set forth its standard of review in child-support cases:

---

[3] We recognize that the amount in the order ($390.00) differs from the amount in the oral ruling from the bench ($383.00). This discrepancy has not been raised as an issue in this appeal, and the order controls. *See* Ark. R. Civ. P. 58; Admin. Order No. 2.

We review chancery cases de novo on the record, and we will not reverse a finding of fact by the chancery court unless it is clearly erroneous. Ark. R. Civ. P. 52(a); *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999). In reviewing a chancery court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Hunt v. Hunt*, 341 Ark. 173, [15 S.W.3d 334]. As a rule, when the amount of child support is at issue, we will not reverse the chancellor absent an abuse of discretion. *Scroggins v. Scroggins*, 302 Ark. 362, 790 S.W.2d 157 (1990). However, a chancellor's conclusion of law is given no deference on appeal. *City of Lowell v. M & N Mobile Home Park Inc.*, 323 Ark. 332, 916 S.W.2d 95 (1996).

346 Ark. at 480, 58 S.W.3d at 843 (quoting *Kelly v. Kelly*, 341 Ark. 596, 599, 19 S.W.3d 1, 3 (2000)).

It is axiomatic that a change in circumstances must be shown before a court can modify an order for child support. *See, e.g., Reynolds v. Reynolds*, 299 Ark. 200, 771 S.W.2d 764 (1989). In addition, the party seeking modification has the burden of showing a change in circumstances. *See id.* In determining whether there has been a change in circumstances warranting adjustment in support, the court should consider remarriage of the parties, a minor reaching majority, change in the income and financial conditions of the parties, relocation, change in custody, debts of the parties, financial conditions of the parties and families, ability to meet current and future obligations, and the child-support chart. *See id.* This court has made it clear that a finding that a material change in circumstances has occurred is subject to a clearly-erroneous standard of review. *See, e.g., Thurston v. Pinkstaff*, 292 Ark. 385, 730 S.W.2d 239 (1987).

A review of the record reveals that Tillery is correct. While acknowledging these touchstones concerning our change-in-circumstances law, Evans fails to show this court in his brief why the circuit court clearly erred in pointing out that he had received two substantial monetary judgments, thereby affecting his financial condition, and that Evans had increased his income based on his affidavit of financial means. In other words, while Evans's brief adequately sets forth the law on the subject, he neglects to make any arguments based on the law. This court has been resolute in holding that we will not address assignments of error that are unsupported by convincing argument or sufficient legal authority.

*See, e.g., Ginsburg v. Ginsburg*, 359 Ark. 226, 195 S.W.3d 898 (2004). Here, Evans merely asserts that there was no material change in circumstances warranting a modification of child support, without any further argument on the subject. Accordingly, we affirm the circuit court's order due to the absence of a convincing argument.

Evans argues next that the circuit court abused its discretion when it did not determine that following the family-support chart, which is part of Administrative Order Number 10, would be unjust and inappropriate. Evans points to nineteen factors that the circuit court could have used to support a deviation from the chart. He claims that he presented enough evidence to show that it would be unjust and unfair to follow the chart, and, thus, it was inappropriate to determine that there was a change in circumstance warranting a one-time "windfall" to Tillery. He asserts that the circuit court did not examine whether the judgments actually changed his financial income and neglected to take into account his debts which he satisfied with the judgment money.

As an initial matter, this court must determine whether an award of monetary judgments constitutes "income" for purposes of deciding child support. Administrative Order Number 10 of the Administrative Orders of the Supreme Court defines "income" as follows:

> Income means *any form of payment, periodic or otherwise, due to an individual, regardless of source,* including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest, less proper deductions for:
>
> 1. Federal and state income tax;
>
> 2. Withholding for Social Security (FICA), Medicare, and railroad retirement;
>
> 3. Medical insurance paid for dependant children; and
>
> 4. Presently paid support for other dependants by court order.

Admin. Order No. 10 (2004) (emphasis added).

■ Without question, the two non-periodic monetary judgments meet the definition of "income" as defined by this court in its order. In addition, this court has previously noted that

the definition of "income" in Administrative Order No. 10 is an expanded definition of income, and one that is "intentionally broad and designed to encompass the widest range of sources consistent with this State's policy to interpret 'income' broadly for the benefit of the child." *Ford v. Ford*, 347 Ark. 485, 495, 65 S.W.3d 432, 439 (2002). In *Ford*, this court affirmed a trial court's decision to include as income the mother's monetary gift from her grandparents, a certificate of deposit, and a retirement payment. In light of the definition of income in Administrative Order Number 10, this court's decision in *Ford v. Ford, supra*, and the State's policy of interpreting income broadly for the benefit of the child, we hold that the circuit court did not err in finding that the judgments constituted income for purposes of determining Evans's one-time obligation for child support.

Evans further contends that the circuit court erred in adhering to the calculations of support in Administrative Order Number 10. This court has previously held that a trial court is required to reference the child-support chart and that the amount specified in the chart is presumed to be reasonable. *See Akins v. Mofield*, 355 Ark. 215, 132 S.W.3d 760 (2003). The presumption that the chart is correct may, however, be overcome if the trial court provides specific written findings that the chart amount is unjust or inappropriate. *See id. See also* Ark. Code Ann. § 9-12-312(a)(2) (Repl. 2002).

■ In the case at hand, Evans argued to the circuit court that he was entitled to deduct old debts which he paid voluntarily out of the judgment amounts he received. He further contended that the judgments were "exceptional and non-recurring income" which should not be considered for child-support purposes. For these reasons, he now claims that the circuit court erred in not deviating from the child-support chart. A review of the circuit court's ruling reveals, however, that the circuit court was clearly convinced that there was no need to deviate from the fifteen percent mandated by the chart. *See* Admin. Order No. 10, § III(b) (2004). The circuit court emphasized that child support is for the benefit of the child and that it is based on a formula which does not take into account voluntary payment of old debts. We hold that the circuit court did not abuse its discretion in this regard, and we affirm the circuit court on this point.

Evans's third point is aligned to the point just discussed. He claims that during a prior bankruptcy, he promised to pay his

creditors if he was ever in a position to do so. He maintains that as promised, when he received the money from the judgments, he paid off his debts in order to maintain his business reputation. He claims that since he is no longer in possession of the awarded money, any increase in the amount of his child-support obligation would be inequitable. He further asserts that the movement of money from him to his creditors and deducting the same from his judgments is analogous to deducting gambling losses from gambling winnings, and he cites this court to our *McWhorter* decision. *See McWhorter v. McWhorter, supra.* He claims that because the money has been paid out, there is no income to now calculate.

■ Again, we disagree. Evans chose to pay old creditors rather than to look to the best interest of his child. Clearly, state law does not allow individuals to pick and choose between previous debts and the support of their children. *See* Ark. Code Ann. § 9-12-312(a)(2) (Repl. 2002). Evans, no doubt, was well aware of his obligations to his child at the time he chose to voluntarily pay debts for which he was not legally liable. We further do not believe that this situation is akin to that of deducting gambling losses from gambling winnings, especially when the creditors paid by Evans were no longer existing creditors because his debts had been forgiven in bankruptcy. This court has never ruled that voluntarily paid debts should be deducted before making a determination of income for child-support purposes. We decline to do so in the instant case.

Moreover, despite Evans's protestations to the contrary, the circuit court did not increase his monthly payment of child support to $390.00 based on the judgment awards. This is evidenced by the following statement by the court which recognized that a one-time lump-sum payment of income differs from recurring income:

> EVANS'S COUNSEL: Your Honor, as the brief sets out, I would take exception to that. This is exceptional and non-recurring income, and I believe it should not be attached to the child support.

> THE COURT: I think you're right, to this extent. I don't think that I can add [the judgments] in now and say from now on, Mr. Evans, you've got to start paying child support based upon this, as well as what he has in the past. That wouldn't be fair, because, he's not going to have this coming in next year. This kind of income coming in on a recurring basis.

But, I think the one-time thing is just like a one-time Social Security benefit that a person receives, and child support comes out of that. I mean, if you get a lump sum settlement for back Social Security benefits, child support's always figured out of that. It's taken out by this government; it's not taken out by the courts then. They have their own doings.

Or, if there's a one-time Workers' Compensation award, I think that would be in the same category. I think that any income that a person receives — as I say, any income they receive, other than SSI. That's the only exception I know of. . . .

■ The circuit court's order, in addition, reflects that the court's decision to increase Evans's monthly child-support obligation was based solely upon his affidavit of financial means:

5) That Plaintiff's current support, based on his Affidavit of Financial Means submitted in this cause, shall be set at Three Hundred Ninety Dollars ($390.00) per month.

It is, therefore, clear to this court that the circuit court did not take the judgments into account when it increased Mr. Evans's monthly child-support obligation.

Affirmed.